IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>FRANCISCO JAVIER TORRES-VILLA,<br><br>　　　　Defendant. | CR 08-0255-TUC-FRZ (GEE)<br><br>**REPORT AND RECOMMENDATION** |

The District Court referred this case to the magistrate for hearing on pretrial matters. Hearing on the defendant's Motion to Suppress was held on June 26, 2008. Upon consideration of the evidence presented and the arguments of respective counsel, the magistrate recommends the District Court, after its de novo review, deny the Motion to Suppress.

## **CHARGE**:

The one-count indictment charges that on February 5, 2008, near Wilcox, the defendant possessed approximately 106.87 kilograms of marijuana with the intent to distribute.

/ / /

/ / /

/ / /

**MOTION TO SUPPRESS:**

Defendant argues all evidence against him must be suppressed because the Border Patrol agent lacked reasonable suspicion to stop his vehicle.

***Testimony of David Mathie***

Mathie has been employed as a U.S. Border Patrol agent for the past four and a half years. On February 5, 2008, at about 2:20 p.m. he was on duty and decided to make an investigatory stop of a vehicle driven by the defendant. Mathie was in his service vehicle on the westside of Highway 191 between the towns of Elfrida and McNeal, about 20-25 miles north of the Mexican border. Highway 191 is a two-lane paved highway which runs almost directly north from Douglas up to I-10. There is a port of entry in Douglas. Mathie testified the population of Douglas is approximately 30,000, and other than McNeal there were no towns south of his location other than Douglas. He also testified Hwy. 191 is a "very commonly used route for illegal aliens" and recently, in fact, there had been intelligence reports of an increase in such activity. The route is also used for narcotics smuggling.

Mathie stated he was observing passing traffic and did not have his emergency lights on. As the defendant's vehicle approached from the south Mathie noticed that both the driver and passenger were sitting very straight and rigid, and the driver had his arms "locked out straight in front of him" holding the steering wheel. He testified that normal traffic through the area is "a lot of local people, farmers and ranchers that live there....[and] as they drive by, they usually wave at us....Most people look at us at least kind of acknowledge our presence...." The defendant's vehicle was traveling "pretty close to the speed limit." It was an older model SUV with heavily tinted windows in the back and in the two rear side windows. It had Arizona license plates.

Mathie decided to pull out and take a "little bit closer look at the vehicle." He did not turn on his emergency lights, but caught up to the vehicle and followed about two car lengths behind it. From the suspect's side view mirror, Mathie noticed the driver was

"continually watching us in it, "almost like as if he was more concerned about what we were doing than him actually driving up the road." Mathie said this was unusual and indicated the driver was "stressed out" by the presence of law enforcement. He also testified the defendant, while watching in his side view mirror "drift[ed] a little bit over the center dividing line...just a couple times."

Mathie did a registration check and discovered the vehicle was from Nogales. He testified, "[W]e usually don't ever see vehicles from there." He stated that to get to Nogales from where he first noticed the defendant one would have to continue north on Hwy. 191 up to I-10, proceed west to Tucson, and then take I-19 south to Nogales. If one were traveling from Douglas the most direct route to Nogales would be to take Hwy. 80 (which goes northwesterly from Douglas) through Tombstone, and then pickup Hwy. 82 (which goes west and then south to Nogales). He stated there is no direct route to Nogales from where he first observed the defendant. Traveling north from his location on Hwy. 91 to I-10 there are several small towns.

Mathie decided to stop the vehicle, and when he activated his lights and siren the defendant immediately pulled over.

On cross-examination Mathie testified Hwy.191 is a public state highway and is not an isolated road. He admitted there were other roads that one could take from his location to get to Nogales other than the ones he described on direct examination. He also admitted that before stopping the defendant he had no information the defendant was in fact traveling from Douglas or that he had crossed from Mexico at Douglas. South of his location was located a Department of Corrections prison near Double Adobe Road. North of his location was Chiricahua Monument, an unrestricted tourist attraction, open to people from anywhere. Mathie testified the defendant did not speed up or take any evasive action as it passed his location. He admitted there was another Border Patrol vehicle stopped alongside him when he first noticed the defendant, and they both pulled out to take a further look at the suspect vehicle. After he first pulled out he had to accelerate in order to catch up to the

1  defendant. In about 30-60 seconds he caught up to the defendant who then slowed down to
2  the exact posted speed limit. He first saw the defendant at milepost 24, and the stop occurred
3  at milepost 28. The defendant's vehicle did not appear to be heavily laden. Mathie testified
4  it was not unusual to find vehicles with dark tinted windows in Arizona.

6  **DISCUSSION;**

7  The defendant argues that Mathie lacked reasonable suspicion to justify the stop
8  of his vehicle.

9  The search and seizure of a motorist suspected of criminal activity is analyzed
10 according to the framework set out in *Terry v. Ohio,* 392 U.S. 1 (1968). For a lawful
11 investigative stop the officer must have a "reasonable suspicion supported by articulable facts
12 that criminal activity 'may be afoot'." *United States v. Sokolow,* 490 U.S. 1,7 (1989). In
13 determining whether reasonable suspicion existed to justify an investigatory stop, a reviewing
14 court is required to "look at the totality of the circumstances of each case to see whether the
15 detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing."
16 *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (internal punctuation deleted). "In the
17 context of Border Patrol [stops], the factors to be considered in determining whether
18 'reasonable suspicion' exists to justify stopping a vehicle include, but are not limited to: (1)
19 characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time
20 of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver...; (6)
21 appearance or behavior of passengers; (7) model and appearance of the vehicle; and (8)
22 officer experience. *United States v. Garcia-Barron,* 116 F.3d 1305, 1307 (9th Cir. 1997)
23 (citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 885 (1975).

24 In the present case Mathie listed the following factors as supporting his decision
25 to conduct an investigatory stop of the defendant: (1) he first noticed the defendant's vehicle
26 20-25 miles north of the Mexican border; (2) Hwy. 191 is known to be used for alien and
27 drug smuggling and recent intelligence information advised those activities had increased;

(3) the driver and passenger were sitting in a straight and rigid manner ; (4) neither the driver or passenger looked toward Mathie as they approached and passed his location; (5) the defendant was driving a older model SUV; (6) the back and rear side windows were heavily tinted; (7) the vehicle was registered from Nogales and that was unusual for the area; (8) after Mathie and the other BPA vehicle got behind the defendant's vehicle the driver spent a lot of time checking his side view mirror such that he crossed over the center line several times; and (9) the defendant slowed down to the exact posted speed limit after the two BPA vehicles began to follow him.

In deciding whether the totality of the circumstances constitute a reasonable suspicion, it is inappropriate to view each factor in isolation and to give no weight to factors for which an innocent explanation may exist. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). Individual factors that may appear innocent in isolation may constitute suspicious behavior when aggregated together. While no particular factor is controlling, and the totality of the circumstances governs, the one vital element is that the agent must have had reason to believe the suspect vehicle had come from the border. Mathie first noticed the defendant's vehicle about 20-25 miles north of the Mexican border and although Mathie admitted he had no specific information the vehicle had, in fact, come from the border, this court believes that considering his testimony regarding the area south of the stop location Mathie could have reasonably concluded the vehicle came either from the border itself or from an area fairly close to it.

Considering the factors listed by Mathie and analyzing them in the context of the "totality of the circumstances", this court concludes Border Patrol Mathie had reasonable suspicion to conduct an investigative stop of the defendant's vehicle.

**RECOMMENDATION:**

In view of the foregoing, the magistrate recommends that the District Court, after

its independent review of the record, **DENY** the defendant's Motion to Suppress. Any party may file objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. If objections are filed, the parties should direct them to the District Court **by omitting the magistrate's initials from the caption.**

This Report and Recommendation is being faxed to all counsel on today's date. The Clerk of the Court is directed to send a copy of this Report and Recommendation to all counsel.

DATED this 26th day of September, 2008.

_____
Glenda E. Edmonds
United States Magistrate Judge